UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMIE L. MUELLER,

       Plaintiff,

v.                                                 Case No. 1:15-CV-51

COMMISSIONER OF SOCIAL              HON. GORDON J. QUIST
SECURITY,

       Defendant.
_____/

## OPINION

This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Because the Court concludes that the Commissioner's decision is supported by substantial evidence and properly applied the applicable legal standards, the Court will affirm the Commissioner's decision to deny benefits.

### BACKGROUND

Plaintiff was born on July 16, 1972, and worked as an accounting clerk. (ECF Nos. 7-5 at PageID.270, 7-6 at PageID.310.) Plaintiff filed an application for disability insurance benefits on November 5, 2009, alleging a disability onset date of July 16, 2004. (ECF No. 7-5 at Page ID.270.) Because Plaintiff was last insured as of March 31, 2010, she was required to show that she was disabled on or before that date in order to obtain benefits. After the claim was initially denied,

Plaintiff requested a hearing. On August 17, 2011, Administrative Law Judge (ALJ) James F. Prothro conducted a hearing, at which Plaintiff and Richard Riedl, an impartial vocational expert, testified. (ECF No. 7-2.) ALJ Prothro denied Plaintiff's claim, (ECF No. 7-3 at Page ID.125), and Plaintiff appealed. The Appeals Council granted Plaintiff's request for reconsideration and remanded the matter back to ALJ Prothro to address Plaintiff's request that he recuse himself and to obtain additional evidence of Plaintiff's mental impairments, evaluate such impairments, and further consider Plaintiff's residual functional capacity. (ECF No. 7-2 at PageID.32.) On July 26, 2013, ALJ Prothro conducted a second hearing, at which Plaintiff, Dr. James Lozer, a vocational expert (VE), and Dr. James Wargel, a medical expert (ME), testified. On September 20, 2013, ALJ Prothro issued his decision finding that Plaintiff is not disabled. (ECF No. 7-2 at PageID.29.)

The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (ECF No. 7-2 at PageID.23.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits,

and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Part 404, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The Plaintiff bears the burden of establishing the right to benefits, *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date through her date last insured of March 31, 2010. (ECF No. 7-2 at PageID.34.) The ALJ then determined that through the date last insured, Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; scoliosis; obesity; trochanter bursitis in the right hip; right lower extremity radiculopathy; status-post excision of lipoma adjacent to her sacrum; and mood disorder due to chronic pain. (*Id.* at PageID.35.) The ALJ noted that the ME had indicated that evidence in the record suggested the potential for a diagnosis of pain disorder associated with both psychological factors and a general medical condition, but he found no such impairments because no treating

4

provider had diagnosed them. (*Id.*) The ALJ next concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at PageID.35–36.)

>The ALJ then determined that Plaintiff had the RFC to:
>
>lift and carry 10 pounds occasionally and less than 10 pounds more frequently; stand and/or walk for two hours in an eight-hour workday and sit for six hours with the option to sit or stand as needed; occasionally use foot controls with the right lower extremity; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extremes of heat, cold, and humidity; is limited to simple, repetitive tasks; occasional contact with the general public; and not able to do a fast-paced job.

(*Id.* at PageID.36–37.) At step four, the ALJ determined that Plaintiff could not perform her past relevant work. (*Id.* at PageID.44) Finally, at step five, based on the testimony of the VE, the ALJ found that, considering Plaintiff's RFC, age, education, and work experience, Plaintiff could still perform jobs that existed in significant numbers in the national economy, including machine tender and inspector. (*Id.* at PageID.45) Accordingly, the ALJ determined that Plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff raises the following issues:

1. The ALJ failed to give proper weight to and properly analyze the medical opinion evidence.

2. The ALJ erred in assessing Plaintiff's allegations of pain.

3. The ALJ failed to consider Plaintiff's impairments.

**I.   The ALJ Properly Evaluated the Medical Opinions**

**A.   Dr. James Hunt**

Dr. Hunt was Plaintiff's primary care physician for many years and had referred her to

various specialists. On August 11, 2011, Dr. Hunt wrote a letter "[t]o whom it may concern," in which he stated that Plaintiff "was in her usual state of good health until early 2008," when she began to experience back pain. (ECF No. 7-7 at PageID.673.) Dr. Hunt reviewed Plaintiff's treatment history, "including aggressive medical management with medications and interventions by a pain specialists." (*Id.* at PageID..673–74.) Dr. Hunt concluded that Plaintiff "remains un-improved with significant pain and disability." (*Id.* at PageID.674.) In considering Dr. Hunt's letter, the ALJ declined to give his opinion on Plaintiff's disability—an issue reserved to the Commissioner—any special consideration. (ECF No. 702 at PageID.42.) Nonetheless, the ALJ considered the balance of Dr. Hunt's opinion but declined to give it "more than limited weight . . . because is it not supported by objective evidence, which even Dr. Hunt indicated did not show the claimant suffered from severe physical impairment." (*Id.*)

In general, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also* 20 C.F.R. § 404.1527(c)(2). A treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th

Cir. Nov. 7, 1991) (per curiam) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician if it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

Plaintiff concedes that disability is an issue reserved to the Commissioner. *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008) ("A physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination."). She argues, however, that the ALJ failed to consider Dr. Hunt's statement that Plaintiff continued to suffer from significant pain and physical impairment after 2008. As noted above, the ALJ did address Dr. Hunt's opinion and decided to give it only limited weight because it was not supported by objective evidence. While the ALJ arguably could have provided more a more detailed explanation for his decision to give the opinion limited weight, he observed that Dr. Hunt had also indicated that the objective medical evidence did not demonstrate that Plaintiff suffered from a severe physical impairment. (ECF No. 7-2 at PageID.42.) Moreover, to be entitled to controlling weight, a treating source's opinion must be a "medical opinion" as defined by the regulations. *See* 20 C.F.R. § 404.1527(c). Medical opinions "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The ALJ observed that Dr. Hunt's opinion failed to provide a function-by-function analysis of what Plaintiff could still do despite her impairments, and, thus, was of limited use. (ECF No. 7-2 at PageID.42.) Regardless, the ALJ did not totally disregard Dr. Hunt's opinion but considered it in light of the other opinion evidence in the record. Thus, the ALJ did not err in evaluating Dr. Hunt's opinion.

### B.     Dr. Wargel

Dr. Wargel, the ME, testified regarding Plaintiff's psychological condition. (ECF No. 7-2 at PageID.61.) Dr. Wargel noted that in March of 2010, Dr. Hunt diagnosed Plaintiff with mood disorder due to general medical conditions, which would be analyzed under Listing 12.04, and that in January of 2011 Dr. Hunt diagnosed Plaintiff with depressive disorder not otherwise specified, which would also be analyzed under Listing 12.04. (*Id.* at PageID.64–65.) Dr. Wargel further testified that the record supported a finding of psychogenic pain under Listing 12.07, but he stated that no treating physician had yet diagnosed it. (*Id.* at PageID.65–67.) Dr. Wargel opined that none of Plaintiff's impairments meet or equal a listed impairment. (*Id.* at Page ID.67.)

When asked about Plaintiff's RFC, Dr. Wargel opined that, considering only Plaintiff's depression, Plaintiff would be slightly limited in her activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence and pace. (*Id.* at Page ID.67–68.) Dr. Wargel then opined that if Plaintiff's pain is also considered, her limitations would rise to marked levels. (*Id.* at PageID.68.) Later in the hearing, the ALJ questioned Dr. Wargel about a Mental Residual Functional Capacity Assessment Form that he had completed. Dr. Wargel opined that Plaintiff would be markedly limited in several areas relating to ability to sustain work activity. (*Id.* at PageID.76–78.) When asked about the basis for his answers, Dr. Wargel stated that he was focusing solely on Plaintiff's depression. (*Id.* at PageID.77.)

The ALJ gave little weight to Dr. Wargel's assessment of marked limitations because he found that such limitations were inconsistent with the record as a whole, which showed that Plaintiff was much more capable of following directions and maintaining concentration than Dr. Wargel opined. (ECF No. 7-2 at PageID.43.) The ALJ also stated:

> Furthermore, Dr. Wargel states his opinion of "marked" limitations was not based on a medically determinable impairment, but rather, was largely based on statements made [sic] the claimant and her husband from their December 2009 Function

8

> Reports, which as previously discussed, are not fully consistent with the objective medical findings. However, Dr. Wargel then stated that based solely on the claimant's diagnosed mood disorder, *yet still accounting for pain*, the claimant had only moderate limitations in social functioning and maintaining concentration, persistence, or pace. Therefore, the "marked" limitations expressed by Dr. Wargel are given little weight, while the "moderate" limitations to which he testified during the hearing, and which are similar to the opinions of Dr Starrett and Dr. Walberer, are given great weight.

(*Id.*)

Plaintiff argues that the ALJ erred by misconstruing Dr. Wargel's testimony because Dr. Wargel stated that his opinion of marked limitations was based solely on Plaintiff's depression. The Commissioner responds that Dr. Wargel made clear in his testimony that Plaintiff's depression alone causes moderate limitations and that such limitations rise to marked levels if Plaintiff's complaints of pain are considered. Both parties are correct. Dr. Wargel said at one point that Plaintiff's depression alone causes *moderate* limitations, but at another point he said that Plaintiff would have *marked* limitations based only on her depression. Moreover, the ALJ's above statement adds to the confusion. Nonetheless, any error by the ALJ in construing Dr. Wargel's testimony was harmless. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (applying harmless error analysis were the ALJ's adverse credibility determination was based on invalid reasons but still supported by substantial evidence). The ALJ gave several reasons, supported by substantial evidence, for discounting Dr. Wargel's assessment of marked limitations, including that his assessment was based on self-reports by Plaintiff and her husband that were not consistent with the objective evidence and that Plaintiff's pain complaints were not entirely credible. (*Id.*) Accordingly, any error does not require reversal.

II.     **The ALJ Properly Evaluated Plaintiff's Credibility**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s

9

for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that, in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

   Plaintiff argues that in assessing her credibility, the ALJ erred by citing her activities of attending church and taking a train ride in mid-2006—approximately 3 years before she completed her Function Report—as indicative that Plaintiff's complaints of pain were not entirely credible. Plaintiff argues that the note regarding the train ride actually states that Plaintiff had more symptoms following the train ride. Regardless, the ALJ cited such evidence not with regard to Plaintiff's complaints of pain, but instead to show that Plaintiff's allegations that she hardly went anywhere and did not like being around other people were not fully credible. (ECF No. 702 at PageID.38.) In terms of pain, the ALJ cited numerous bases for concluding that Plaintiff's complaints of pain were not entirely credible. Although Plaintiff cites some evidence that would tend to support her claim that she is more limited than the ALJ found, the ALJ's reasoning was supported by substantial

10

evidence. Plaintiff thus fails to show any basis for disturbing the ALJ's credibility determination.

Plaintiff also argues that, in finding that Plaintiff was never prescribed a cane or a walker, the ALJ overlooked a note from an occupational therapist recommending that Plaintiff use a cane for reported falls. (ECF No. 7-7 at PageID.617.) Regardless, the ALJ noted that an assistive device was never prescribed by an acceptable medical source. The occupational therapist's note does not undermine this finding.

### III. The ALJ Properly Considered Plaintiff's Impairments

Last, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC fails to account for the effects of Plaintiff's obesity and her need for a cane or other assistive device.

With regard to obesity, at step two, the ALJ found that Plaintiff's obesity was a severe impairment, (ECF No. 7-2 at Page ID.35), and at step three concluded that it did not cause or contribute to listing-level impairments. (*Id.*) Although the ALJ could have provided a more detailed discussion of the effects of Plaintiff's obesity, there is no indication in the record that Plaintiff's obesity contributed to limitations beyond those the ALJ specified in his RFC findings, which included an option to sit or stand as needed. Plaintiff fails to point to any evidence showing that her obesity imposed additional limitations or that the ALJ failed to properly evaluate its limiting effects. *See Smith v. Astrue*, 639 F. Supp. 2d 836, 845 (W.D. Mich. 2009) (finding no basis to reverse the Commissioner's decision where the plaintiff failed to cite any medical evidence showing that her obesity restricted her ability to work beyond the limitations the ALJ included in his RFC finding). Accordingly, Plaintiff has not shown that the ALJ failed to adequately comply with SSR 02-1p in his consideration of Plaintiff's obesity.

As for the need for a cane or assistive device, Plaintiff notes that Dr. Lazzara, a consultative examiner, opined that the clinical evidence supported need for a walking aid to reduce pain. (*Id.* at

11

PageID.42.) However, the ALJ rejected this finding because "the majority of treatment notes do not indicate any need for an assistive device for ambulation." (*Id.*)  The ALJ also observed in his RFC discussion that although Plaintiff was using a cane at the 2013 hearing and used a walker at the 2011 hearing, no medical provider had prescribed an assistive device. (*Id.* at PageID.37.)  Plaintiff fails to offer any support for rejecting the ALJ's well-supported conclusion that she does not require an assistive device.  Moreover, Plaintiff fails to explain why an assistive device would require a more restrictive RFC than the ALJ found.  Thus, Plaintiff's argument fails.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Commissioner's decision to deny Plaintiff disability insurance benefits.

An Order consistent with this Opinion will enter.


Dated:  March 31, 2016                             /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE